IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02649-CMA

**CARYN ANN HARLOS**,
**KIYOMI BOLICK**, and
**ANDREW MADSON**,
    Plaintiffs,

v.

**MITCH MORRISEY**, in his official capacity as First Judicial District Attorney,
**WAYNE W. WILLIAMS**, in his official capacity as Colorado Secretary of State,
**CYNTHIA H. COFFMAN**, in her official capacity as Colorado Attorney General,
    Defendants.
_____
**REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO F.R.C.P. 65**
_____

On the above-captioned motion, Plaintiffs submit this Reply limited to Defendants' briefed arguments on justiciability and the "balance of hardship" analysis.

**I.    Plaintiffs' Claims Are Justiciable.**

    **A.    The Non-Enforcement Defense Goes to Ripeness, Not Standing.**

Even accepting Defendants' (disputed) claim of non-enforcements: that is a ripeness, not standing, argument. Plaintiffs' *injury* for standing is the chilling of speech, which clearly suffices: "[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see Cmty. Commc'ns Co. v. Boulder*, 660 F.2d 1370, 1376 (10th Cir. 1981) ("[T]o the extent that First Amendment rights are infringed, irreparable injury is presumed.").

Defendants claim that *until and unless* they enforce more aggressively, Plaintiffs have not yet suffered their speech injury – which is an argument that the injury claim is not yet *ripe*. "[D]istinguish[ing] it from standing and [to] explain[] the existing caselaw[,]

[r]ipeness … involv[es] the question of *when may a party seek preenforcement review of a statute.*" Erwin Chemerinsky, *Constitutional Law: Principles and Policies* § 2.6.1 at 109 (5th ed. 2015) (emphases in original); *see S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1159-60 (10th Cir. 2013) ("'[C]ompared to standing, ripeness assumes that an asserted injury is sufficient to support standing, but asks whether the injury is too *contingent or remote* to support present adjudication.'") (emphasis added) (quoting 13B Charles Alan Wright et al., *Federal Practice and Procedure* § 3532.1 (3d ed. 2008)).

Confirming that Defendants argue ripeness, not standing: *Palma* found standing, but not ripeness, where the challenged policy had not yet been applied to Plaintiff: the decision on oil leases would cause "injury" for *standing*; but the injury was *unripe* for adjudication because the "interim decision" was not yet in effect, "[n]or ha[d] the interim decisions had any immediate impact" on plaintiff. *Id*. Thus ripeness, not standing, is the justiciability issue for, as here, challenges to laws arguably not yet affecting plaintiffs until more aggressively enforced. *E.g., Poe v. Ullman*, 367 U.S. 497, 507 (1961) (no ripeness given lack of any "threat of enforcement" of contraception ban); *Coalit'n for Sustainable Res. v. U.S. Forest Serv.*, 259 F.3d 1244, 1251 (10th Cir. 2001) (no ripeness where defendant was still "actively considering", and had "not yet rejected," plaintiff's proposal).

**B.     Plaintiffs' Claims Are Ripe.**

**1.     Plaintiffs' Claims Survive Traditional Ripeness Analysis.**

As detailed below, a "relaxed" ripeness analysis applies to facial challenges to speech-chilling laws. But Plaintiffs' claims satisfy even *traditional* ripeness analysis:

> To determine … ripe[ness], we examine both "the fitness of the issues for judicial decision and the hardship to the parties of withholding … consideration [,] …

look[ing] to four factors: (1) whether the issues … are purely legal; (2) whether the … action involved is 'final' … ; (3) whether the action has or will have a direct and immediate impact upon the plaintiff and (4) whether the resolution of the issues will promote effective enforcement and administration."

*Coalit'n for Sustainable Res.*, 259 F.3d at 1251 (citations omitted). Here, all four factors show the claim is ripe enough to allow Plaintiffs their day in court to gain clarity on whether the First Amendment allows their desired speech that Colorado law forbids:

(1) Plaintiffs' facial challenge presents a "purely legal" question – how the First Amendment applies to a Colorado statutory restriction on voter expression;

(2) the law has been "final" for decades;

(3) the statute's undisputed criminalization of Plaintiffs' actual and proposed expression yields "a direct and immediate impact upon the plaintiff[s]"; and

(4) "effective enforcement and administration" would be furthered by an order ending this sudden unlawful crusade by the Secretary of State and the District Attorney to squelch voters' actual and planned expression.

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967), found ripe a challenge to as-yet-unenforced legal dictates about drug label wordings, on three rationales apt here:

(1) as here, the law was "final" and enacted, neither nonbinding nor interim;

(2) despite the lack of prosecution, the law had "concrete … effects" on plaintiffs', who had to alter their label wordings to avoid violations – just as Plaintiffs here have had to alter their own speech; and

(3) the case posed "purely legal … issues" ready for adjudication, because (as here) it was a facial challenge to a legal dictate, not a fact-specific challenge about whether certain words did or did not violate the dictate.

*Id.* at 148-49.

In sum, Plaintiffs' claims survive traditional ripeness analysis, because "[in] *Abbott Laboratories* … [and] numerous other cases … , the Supreme Court found substantial hardship in denying judicial review because of the choice … between refraining from

3

allegedly protected conduct or risking sanctions." *Chemerinsky, supra,* at § 2.6.2 at 111.

### 2. Plaintiffs' Claims All the More Easily Survive the "Relaxed" Ripeness Analysis for Claims that "Threat of Enforcement, Without More," Imposes the Ripe Injury of Speech Being Chilled.

Though Plaintiffs' claims satisfy the traditional ripeness inquiry, "relaxed" ripeness analysis applies to First Amendment challenges in which the main harm is not *actual prosecution*, but *chilling* of the speech – because stifling citizen speech broadly, not penalizing a few, is the ripe injury arising from "threats of enforcement, without more":

> [T]he matter is ripe for review. … [A]s we have observed, "customary ripeness analysis ... is ... *relaxed* somewhat ... where a *facial challenge, implicating First Amendment values*, is brought." *New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir. 1995). In that situation, "'[r]easonable predictability of enforcement *or threats of enforcement, without more*, have sometimes been enough to ripen a claim.'" *Id.* (quoting *Martin Tractor Co. v. Federal Election Comm'n,* 627 F.2d 375, 380 (D.C. Cir. 1980)).

*ACLU v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999) (emphases added; alterations in original). One of Defendants' own cited cases *Ward v. Utah*, held similarly in finding standing – that speech claims require "lessening" justiciability limits, so "mere threat of prosecution" suffices to warrant hearing speech challenges to avoid any "chilling effect":

> Because of the significance of First Amendment rights, the Supreme Court "has enunciated other concerns that justify a *lessening of prudential limitations* on standing." "[T]he *mere threat of prosecution* under the allegedly unlawful statute may have a *'chilling' effect* on an individual's protected activity," and "the concern that constitutional adjudication be avoided whenever possible may be *outweighed by society's interest in having the statute challenged.*"

321 F.3d 1263, 1266-67 (10th Cir. 2003) (citations omitted).

While all parties correctly cite Tenth Circuit precedent, the Supreme Court recently clarified that "threatened enforcement of a law" restricting election speech suffices to make a challenge to that law ripe: "When an individual is subject to such a threat, an actual

4

arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014). *Dreihaus* found ripeness and standing in a preenforcement First Amendment challenge to a campaign speech restriction, *id.*; the fact evidence showed prosecutions of others, but that recent – and unanimous – Court holding confirms the nearly identically worded repeated holdings by the Tenth Circuit that "threats of enforcement, without more" suffice. *ACLU v. Johnson, supra (quoting New Mexicans for Bill Richardson, supra)*.

Even before the above caselaw, threats chilling constitutional rights, without more, long have sufficed, such as in reproductive rights holdings that plaintiffs "safe from any sort of prosecution" still have justiciable claims due to the "continuing restrictive effect … which is the basis of their complaint." *Friendship Med. Ctr. v. Chicago*, 505 F.2d 1141, 1146 (7th Cir. 1974) (allowing challenges to abortion restrictions unenforced against plaintiffs) (quoting *Doe v. Bolton*, 410 U.S. 179 (1973) (holding same)).

*Susan B. Anthony List* calls into doubt any pre-2014 caselaw that might deem withdrawn threats insufficient – but Defendants' cases also are inapt on their facts.

- Ballot photos undisputedly *are* a crime, while in *Mink v. Suthers* the *opposite* was undisputed: that, the prosecutor agreed, calling a teacher "puke" "could not be prosecuted under the statute." 482 F.3d 1244, 1250 (10th Cir. 2007).

- The *Jordan v. Sosa* parties "stipulated" that the prison's rejection of sexual material did *not* base on the challenged statute – so plaintiff's grievance was against prison rules, not the *statute*. 654 F.3d 1012, 1020 (10th Cir. 2011).

- Unlike Plaintiffs, one of the *Winsness v. Yocom* plaintiffs "was not … even threatened"; the other "alleged neither an intent nor a desire to violate the flag-abuse statute in the future." 433 F.3d 727, 732, 736 (10th Cir. 2006).

- The "undisputed" lack of any threat identically doomed the challenge in *D.L.S. v. Utah* to a sodomy ban that never had been applied or threatened to anyone,

5

other than in a *rape* case. 374 F.3d 971, 974-75 (10th Cir. 2004).

Thus, Defendants argue nonjusticiability where, unlike here, (a) the law is *undisputedly inapplicable* to Plaintiffs' acts (*Mink* and *Jordan*), (b) there were *no chilling threats* at all (*D.L.S.*), or (c) plaintiffs had *no ongoing plans* for the proscribed speech (*Winsness*).

Especially apt is *Babbitt v. United Farm Workers*, which held justiciable a challenge to a law that (as here) criminalized "publicity" on an issue of public import: "union publicity directed at consumers of agricultural products." 442 U.S. 289, 295 (1979). Though "the criminal penalty provision has not yet been applied and may never be applied to" plaintiffs, *Babbitt* held that "when *fear* of criminal prosecution under an allegedly unconstitutional statute is *not imaginary or wholly speculative*[,] a plaintiff need not 'first expose himself to actual arrest … to challenge" it. *Id.* at 301-02 (emphases added). It sufficed that, as here, (a) the "publicity provision on its face" proscribed the recent and future advocacy, so (b) Plaintiffs "must curtail their … appeals, and thus forgo full exercise of" speech rights. *Id.*

It is no answer that Defendants now say they will not enforce the law. The very reason for this case is the October 2016 crusade, including by high officials of State and City government alike, to "invok[e] the criminal penalty provision," *id.* at 302, repeatedly:

- On October 20, 2016, District Attorney Morrissey declared ballot selfies "ILLEGAL," quoting the statute[1] – a threat he refused pleas to retract.[2]

- The same day, Secretary Williams and his office made clear the ballot ban was no dead letter, publicly stating that it "may be *more important* in Colorado than in other states and may be *more timely* today than ever."[3]

- Rank-and-file officials got the message to tell ballot-posters they committed a

---

[1] Verif. Compl. ¶¶ 55-57 (Doc. #6).
[2] Verif. Compl. ¶¶ 55-57 (Doc. #6).
[3] Verif. Compl. ¶¶ 58-59 (Doc. #6).

6

crime, as when an Assistant Attorney General[4] quoted the statute to inform Bolick her post was "criminal"; Bolick replied tersely ("Ballot photo deleted. Fine.") in deleting her post – an result that was upsetting, not "lighthearted."[5]

Given Defendants consistently making threats and consistently clarifying that they really mean it – the D.A. refusing to retract, and the Secretary following up that the ban is now even "more important" – their eleventh-hour non-enforcement verbiage is too nonbinding and empty to let voters violate a criminal statute with comfort.

- the non-prosecution decisions are *nonbinding and case-specific*, with D.A. Morrissey calling them an "exercise of prosecutorial discretion and judgment" and an "interpretation" to not bar oral disclosure (Def. Resp. at 5-6);

- D.A. Morrissey's non-prosecution decision is *limited in scope*, applying only to "mail-in," not in-person, ballots (*id.* at 5);

- the decision is *limited in time and geography*, as D.A. Morrissey's successor takes office in just weeks, and there is no assurance from various other District Attorneys, such as in Adams County, where Plaintiff Bolick works; and

- the District Attorney and Attorney General have no *rulemaking power* to bar enforcement – and the Secretary of State has issued no relevant rule (and could not order county prosecutors not to enforce a criminal law anyway).

More fundamentally, this is not a case of officials permanently ending a speech threat by retracting an overly aggressive reading of a statute – such as *Mink*, in which a prosecutor initially threatened a speaker, but then concluded he actually "could not" prosecute calling a teacher "puke" as "criminal libel." 482 F.3d at 1250. Rather, because ballot posts undisputedly are crimes, this case is like *Babbitt*, in which the "publicity provision on its face" clearly proscribes the speech. 442 U.S. 289, 295 (1979).

---

[4] The official was a Facebook "friend," but even before the case, their recent relationship was as acquaintances, not close friends or confidantes who tease or advise each other.
[5] Verif. Compl. ¶¶ 35-42 (Doc. #6); St. Def. Resp. at 9 (#23) & Ex. G ¶¶ 3-6 (#23-7).

In sum, because ballot photos undisputedly are crimes, Defendants cannot un-ring the bell of their on-record public statements accurately informing the world Plaintiffs' speech is criminal. Social media entities delete posts and ban users for criminal speech, so Plaintiffs remain at real risk of losing substantial speech rights: Facebook or Twitter would not be wrong in finding, based on a complaint from an enemy of Plaintiffs' or on an algorithm searching for illegal posts, that Plaintiffs' posts or accounts must be deleted. In sum, when the high prosecutor and election official publicly and accurately call Plaintiffs' speech "criminal," they cannot credibly deny a chilling effect on speech.

Indeed, after not only making threats but refusing to retract them pre-litigation and even calling the speech ban "more important" than before, Defendants can hardly deny it: chilling speech was the entire *purpose*, and thus the predictable *effect*, of their threats. In short, they expressly tried to shut down speech like Plaintiffs; they succeeded in chilling that speech; so they cannot credibly deny the very chilling effect that was the entire purpose of their successful campaign to cite a criminal statute to deter speech.

### C. Plaintiffs' Claims Are Not Moot: The Non-Enforcement Claims Are Insufficient, and "Voluntary Cessation" Does Not Moot a Challenge.

On the *facts*, Defendants' claim that non-enforcement undercuts any chilling fails because, as detailed above, their assurances are too nonbinding, too limited, and contrary to Defendants' clear purpose and effect in literally *instructing* voters to chill their speech. On the *law*, Defendants are not the first parties to get sued, and only then disclaim the violation to argue mootness. The "voluntary cessation" doctrine dooms such gambits.

> It is well settled that … "*voluntary cessation* of a challenged practice does *not* deprive a … court of its power to determine the legality …." "[I]f it did, the courts would be compelled to leave '[t]he defendant ... free to return to his old ways'" ….

> [T]he standard … for determining whether a case has been mooted by … voluntary conduct is *stringent*: "A case might become moot if subsequent events made it *absolutely clear* that the … behavior could not reasonably be expected to recur." The "*heavy burden* of persua[ding]" … the challenged conduct cannot reasonably be expected to start up again *lies with the party asserting mootness*.

*Friends of the Earth v. Laidlaw Envtl. Serv.*, 528 U.S. 167, 189 (2000) (citations omitted).

The *Friends of the Earth* defendant far more credibly evidenced an end to the challenged practice than the Defendants here. There, defendant's unlawful mercury discharge was followed by its "achievement of substantial compliance," then followed by "the closure of its Roebuck facility" where the discharge occurred – together, quite plausible evidence the challenged violations would not recur. *Id.* at 193. Yet even correcting the violation, then eliminating the previously-in-violation facility, did not moot the challenge. Defendant retained a permit granting it *legal authority* to discharge waste water, which sufficed for the Court to hold that "[t]he effect of both Laidlaw's compliance and the facility closure on the prospect of future violations … [was] a disputed matter," and thus that defendant failed its burden of proving that "these events made it *absolutely clear* that Laidlaw's permit violations could not reasonably be expected to recur." *Id.*

Defendants' mootness argument is far *weaker* than the argument that failed in *Friends of the Earth*: there has been no finding of "substantial compliance" by, nor "closure" of, any agency committing the violations. And like the *Friends of the Earth* defendant, here Defendants retain full legal power to renew the challenged practice: in *Friends of the Earth*, a properly issued permit remained on the books, granting defendant carte blanche to renew the practice; similarly here, a properly enacted statute remains on the books, granting Defendants carte blanche to renew the practice.

9

Equally apt is how *Friends of the Earth* described the lack of mootness in an older case challenging Los Angeles police "chokehold" practices. Even a complete "citywide *moratorium* on police chokeholds … would not have mooted an otherwise valid claim for injunctive relief, because the moratorium by its terms was *not permanent*." *Id*. at 190 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). As detailed above, Defendants' alleged announcement of non-enforcement is at worst disingenuous, but at best is "not permanent," just a "moratorium" – making its voluntary cessation no source of mootness.

In sum, nothing Defendants can say alters the reality that the speech-criminalizing statute remains on the books, able to be enforced at the whim of a zealous prosecutor or administrative enforcer in any one of many judicial districts (including Denver, where District Attorney Morrissey is leaving office in just weeks), or by the Attorney General's office (where the incumbent may leave office at the end of her term in two years).

The sole contrary case Defendants discuss, *Brown v. Buhman*, found mootness after a disclaimer of intent to prosecute bigamy, but was unlike this case in key respects:

(a) the *Brown* disclaimer of a bigamy prosecution gave far more assurance of non-prosecution because it did not follow the multiple threats present here;

(b) "the Browns' move to Nevada eliminated any reasonable expectation that the Browns will be prosecuted" by the state (Utah) they permanently left – completely unlike here, where Plaintiffs remain subject to the state law; and

(c) the Browns' claims implicated mainly Due Process and Equal Protection intimacy and marriage rights – unlike Plaintiffs' pure speech claims, which pose heightened chilling concern even when enforcement is uncertain.

822 F.3d 1151, 1169 (10th Cir. 2016).

All that could meet Defendants' "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again" *Friends of the Earth*,

10

528 U.S. at 189, would be a legislative repeal – which, tellingly, has not even been proposed, despite the substantial bipartisan political clout Defendants wield as:

    (a) the state Attorney General, who employs a "Director of Legislative Affairs … responsible for overseeing the Attorney General's legislative agenda, as well as all other legislation that impacts" the office;[6]

    (b) the Secretary of State charged with enacting election regulations and working with the legislature on proposed election legislation; and

    (c) the District Attorney office of the largest city in the state.

## II. The Balance of Hardships Supports Plaintiffs: Temporary Relief Would Impose No Hardship on Defendants, While Providing Plaintiffs Security That Their Recent Speech Is Not Criminal and Their Planned Speech Can Proceed.

In the balance of hardships, the hardship to Plaintiffs is the chilling effect on their speech – detailed above. Following is discussion of hardships Defendants assert.

*Inability to prosecute ballot photos* is no hardship because while Defendants' non-prosecution assurances are too limited and non-binding to avoid chilling, Plaintiffs here seek only temporary, preliminary relief – an order barring enforcement in the short term.

*Investigations of actual voter fraud* will not be materially hindered by enjoining the blanket ban on *all* ballot photos. Laws against voter-bribing/threatening remain intact – and any ballot photo still can be *investigated* for evidence it is vote-buying/threatening confirmation, not just political speech. So an injunction would hinder no investigations of malfeasance, only *prosecution* of ballot posts *lacking* indicia of vote-buying/threatening.

Election administration similarly will not be hindered in any material way.

- Most photos would be of at-home mail voting, and the in-person fraction would not inject photography into previously photo-free pollsites – because Colorado

---

[6] Attorney General, "Senior Staff" (https://coag.gov/about-us/colorado-attorney-general-senior-staff).

*already* allows anyone identifying as "media" to photograph at pollsites.[7]

- Colorado limits in-person voting to 15 minutes,[8] also barring "undue delay" in voting booths[9] – rendering non-compelling Defendants' speculation that voting scould slow if, among in-person voters, some take too many photos.

- Sharing a ruling with county clerks' election staff is no hardship: through Election Day, the Secretary already sends them written advisories about new developments and has a "clerk's corner" webpage for county clerks' offices.[10]

Finally, Plaintiffs did not unduly delay filing suit. Judge Sutton may or may not be right to question why the Michigan plaintiffs waited until near Election Day,[11] but other courts have been untroubled by election-eve challenges to a controversy that, as here, arose only during election season.[12] Defendants cannot claim unfair surprise in an election-eve speech-rights lawsuit after their election-eve speech-chilling campaign.

Respectfully submitted this 1st day of November, 2016.

| | |
|---|---|
| /s/ Scott Moss | *s/ Adam Frank* |
| Scott A. Moss, Esq. | Adam Frank, Esq. |
| 8053 E. 24th Dr., Denver CO 80238 | Faisal Salahuddin, Esq. |
| 720-839-2920 / moss.scott.a@gmail.com | Frank & Salahuddin LLC |
| Attorney for Plaintiffs | 1741 High St., Denver CO 80218 |
| | 303-974-1084 / adam@fas-law.com |
| | Attorney for Plaintiffs |

---

[7] 8 C.C.R. § 1505-1(8.18) (allowing "photograph[y]" by "media" with no mandate to exclude people who so request: "Please *take pictures or video* without … supplemental lighting. … There may be workers who ask you not to include their images in … pictures or video. We encourage you to honor those requests *if* you can reasonably do so.") (emphases added).

[8] 8 C.C.R. § 1505-1(7.9.4) ("Except for voters with disabilities, the maximum allowable time in a voting booth is 15 minutes if there are voters waiting.")

[9] C.R.S. § 1-7-115 ("[E]lectors shall cast their ballots without undue delay….").

[10] Secretary of State, "Clerk's Corner" (https://www.sos.state.co.us/ccorner/LoginCorner.do)

[11] *Crookston v. Johnson*, No. 16-2490, 2016 WL 6311623 (Oct. 28, 2016).

[12] *Rideout v. Gardner*, 123 F. Supp. 3d 218 (D.N.H. 2015), *aff'd*, 2016 WL 5403593, No. 16-2021 (1st Cir. Sept 28, 2016) (striking ballot photo law, in case filed shortly before election with preliminary injunction motion); *Ind. Civil Liberties Union v. Ind. Sec'y of State*, No. 15-cv-01356, 2015 WL 12030168 (S.D. Ind. Oct. 19, 2015) (same).

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2016, I served a true and complete copy of the foregoing REPLY IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO F.R.C.P. 65 upon all parties through ECF:

| | |
|---|---|
| Andrew David Ringel, Esq. | Christopher M. Jackson |
| Matthew Joseph Hegarty, Esq. | LeeAnn Morrill |
| Hall & Evans, LLC - Denver | Matthew David Grove |
| 1001 Seventeenth St., Ste. 300 | W. Eric Kuhn |
| Denver, CO 80202 | Colorado Attorney General's Office |
| | Ralph L. Carr Colorado Judicial Center |
| | 1300 Broadway, Denver, CO 80203 |

_/s/ Scott Moss_
Scott A. Moss